All right, Mr. Levengood. Thank you, Your Honors. May it please the Court. My name is Ian Levengood, and I am here on behalf of the plaintiff and the appellant in this case, along with my esteemed colleague, Mr. Aaron Swift. We are here to ask that the order granting Wells Fargo's summary judgment be reversed and remanded for two reasons. Before we get into the subject of it, I would like to give a very brief contextual backdrop that will help Your Honors understand the arguments that will be advanced here today. Mrs. Feltz is an individual who had a job and lost a job and proactively reached out to Wells Fargo requesting forbearance and unemployment assistance regarding her mortgage loan. A program was offered to Mrs. Feltz. Mrs. Feltz had accepted the terms of that offer from Wells Fargo and had fully performed on that forbearance program while she was seeking gainful employment. It is undisputed that Mrs. Feltz fully performed on this forbearance program. She made all of the payments as Wells Fargo instructed on time, and she ultimately did sell her home and pay off the loan before the termination of the program. On moving down to the State of Florida to then buy a home here, she was remystified when pulling her credit report that all of the time during the forbearance program when she was satisfactorily performing under those terms that Wells Fargo had been in fact reporting her as delinquent in her payments for up to 180 days during the entire term of the forbearance program as well as past due $22,308 notwithstanding the fact that she had made every payment that Wells Fargo had requested she make during the terms of the forbearance plan. We believe that the trial court erred. There wasn't really a renegotiation of her loan. This is a forbearance program, Your Honor. That's correct. So it was a temporary agreement, a partial payment agreement that lasted a six-month period of time. So technically, she was delinquent on her loan. I would disagree with that characterization, Your Honor. I mean, this is a partial. Why is that not true? Because this is a partial payment agreement, okay? The fact that it is not a permanent loan modification makes it no less a contract than an agreement between- The foreclosure was stayed, any foreclosure, in return for which she made certain payments. So there may be some, on fairness perhaps, she may not have understood that. But is that the claim that you have here? Isn't the information accurate? She agreed to pay a certain amount, and she didn't pay a certain amount. She originally agreed to pay a certain amount. She then subsequently agreed to pay a different amount. Are you saying then that this was a modification of the note? It was a partial payment agreement for the six-month period of time wherein- My question is, there is a note that obligated her to make certain payments. Did the forbearance agreement modify the note? For the six-month period of time in question, yes. It told her that she had to make $25 payments for six months. It told her specifically not to- That's a renegotiation of the note when you say modified the note. The note was still there. The note is still there, yes, Your Honor. She agreed not to proceed with the foreclosure if she paid such and such for six months. The terms of the partial payment agreement didn't expressly state that. I mean, it said that they were going to forbear foreclosing. But I mean, the mere definition of forbearance in itself is foregoing a legal right, typically regarding the payment of a debt. While yes, the foreclosure- Well, not regarding payment, regarding exercising their rights under the loan agreement. Part of which is demanding payment due. Part of which is their obligations to report that note to the credit bureaus. I think it's not just the foreclosure that was one of the rights that Wells Fargo had that was foreborne, but also the ability to collect the full contractual payments during the partial payment agreement term. What Wells Fargo reported to the credit agency, that's in the record and that's not in dispute? That is in the record and not in dispute. That is right. Now, we believe what they've reported is in the record and not in dispute. We think it's incomplete. So I guess what I'm getting at is there's no factual dispute? No, I mean, and we're here. Ironically, we're here appealing the entry of summary judgment in favor of Wells Fargo. There were competing motions for summary judgment. I firmly believe that Mrs. Feltz was entitled to summary judgment as a matter of law because it is undisputed in the record before the trial court that from the corporate representative's testimony, as well as two loan service specialists for Wells Fargo, that they were trained to report forbearance payments like these payments as late and that their system had zero ability to adequately report these types of forbearance agreements. So notwithstanding, what was reported is that she was paying a reduced amount pursuant to a forbearance plan. Actually, it should have. It was reported that she was paying under a partial payment agreement. There is a code that the Metro 2 guidelines and the CDIA says that furnishers like Wells Fargo should use. It's a CP code, which stands for Accountant Forbearance. They didn't have the ability to do that based upon their system. Instead, they reported paying under a partial payment agreement. Is the credit report somewhere on the record? I couldn't find it. The credit report, I do believe, Your Honor, is part of the record, and it was attached as an exhibit to Drum and the corporate rep's testimony. So you're saying they should not have reported that she was paying pursuant to an unemployment forbearance plan? They should have reported that. They didn't. Because that's the type of information that I would think creditors would want to know. Absolutely. So Wells Fargo reported that she was paying under a partial payment agreement. The problem is they then didn't report any of the other terms of the partial payment agreement. Instead of reporting that $25 was due for the month starting in September of 2012 through January 2012, they continued to selectively report that it's still the $2,197.38 that was due, notwithstanding that being wholly contradicted by the program that Wells Fargo offered and Ms. Feltz accepted. They additionally reported her as increasingly past due up to the amount of $22,308, when during this six-month period of time, the program, this partial payment agreement that Wells Fargo offered and that Feltz accepted and completely performed on, she was zero past due. That money was to accrue, which is, again, a term. It's an accounting term, and becomes due in the future after she completes this partial payment agreement or she becomes gainfully employed. That time never came to pass. She ultimately sold the home and entirely paid off the loan before the expiration of the plan and before she gained- Is there any case that you have cited that supports the proposition that a forbearance agreement operates as a modification of the loan obligation under the note? I think all of your cases have to do with loan modifications, but not with forbearance agreements. So where do we look to for that? Well, so, and again, these cases aren't going to assert in a Fair Credit Reporting Act context whether or not a partial payment agreement is, in fact, a permanent loan modification or not. I do have cases, Your Honor, that we have cited that talk about how loss mitigation programs, like a HAMP program, a trial payment program, all that are precursors and predecessors to a permanent loan modification. How payments made under those types of plans should be credit reported. We've cited three of them, the Darren v. BOA case, Bank of America, there's a Bradshaw v. Bank of America Corporation case, and a Davenport v. Sallie Mae case. All three of these cases, Your Honor, we think are very, very analogous to the case at hand here. In each of the Bank of America cases, those involved consumers wherein they, again, engaged in HAMP trial payment plans trying to modify the loan. So again, similar to the case here, we have not gotten to a permanent loan modification yet. We're still dancing on the terms of the original note and mortgage. We've engaged in loss mitigation and trying to modify this loan. And during that trial payment plan, when payments were being made under that trial payment, in each case, Bank of America had reported those trial payments as past due and essentially had omitted the information regarding the loss mitigation program. And both of those courts found that that was incomplete and inaccurate because it's not conveying the entire picture regarding this loan and how this consumer is performing regarding the terms of those loans. Now, your claim is that Wells Fargo failed to carry out a reasonable investigation? Absolutely, and candidly- So what would that have resulted in, had a reasonable investigation been carried out? They would have looked at their own materials. They would have taken, not selectively, I mean, Wells Fargo is effectively engaged in selective willful blindness here. They did report two components of this partial payment agreement accurately in the credit report, and that was that for the two months in July and August, it's called zero fill. No payment obligations were due. Their system, the Black Knight system, ironically, it had the ability to do that. So Wells Fargo reported that correctly. However, Wells Fargo's system, because of system limitations, did not allow them to enter the terms of a subsidiary agreement, this partial payment agreement in its system. And so they've essentially cherry-picked and selected one item to report the truthfulness of and the rest they continue to just let ride on the terms of the original note and mortgage. All of the cases that we've cited basically say you need to consider all of the facts and circumstances there, and you need to be able to report not just selectively, but the totality of that information to give a user of that credit report accurate information in making a determination as to Ms. Feltz' creditworthiness. She was robbed of that opportunity because Wells Fargo didn't report the whole picture. They didn't say that your payments were reduced to $25. They didn't say that you had satisfactorily performed and made all those payments, and they didn't say that at the time of those payments that you were current and any amount that you would still owe would be owed in the future at some point in time. Those facts and circumstances are expressly enumerated in Wells Fargo's letter, and they are expressly before the record, before the trial court below, and they are not in dispute. Thank you. Thank you, Your Honors. Ms. Mello. Good morning. May it please the court. My name is Kim Mello, and I represent Wells Fargo in this matter. The sole question in this appeal is whether the district court reversibly erred in its determination that Wells Fargo, as a matter of law, accurately reported Ms. Feltz' account as delinquent in light of the forbearance plan. The answer to that question is no. Based on the undisputed facts viewed in the light most favorable to Ms. Feltz, there's only one possible conclusion that can be reached, and that is that the reporting was neither inaccurate nor material misleading. Ms. Feltz heavily relies on the letter that approved her for the forbearance plan to argue that there was a material fact in dispute. The accrued amount isn't due until after the plan is completed pursuant to the plan, right? That is correct. How is it delinquent prior to the completion of the plan, and why can't a reasonable jury determine that that's a violation of the Fair Credit Reporting Act to report the accrued amount as delinquent when it's not delinquent until after the plan is completed? Because you have to separate out the fact that there is a forbearance plan and that she entered into a mortgage loan. She was clearly delinquent under the mortgage. There is no dispute. She owed $2,100 per month, and she was only paying $25 per month. Wells Fargo made it clear, and I'm sorry. But she wasn't delinquent with respect to the accrued amount, was she? She wasn't delinquent under the forbearance plan. She was making those timely payments under that plan, but that forbearance plan did not modify the mortgage loan, and that is just a critical distinction. And what was reported was entirely accurate. Did you report that she was making partial payments under the forbearance agreement as agreed upon? We reported yes. What did you say? What did we exactly say? You can't talk away from the microphone. I'm sorry. I just wanted to make sure I was correct. It says, paying under a partial payment agreement. What are you looking at? I am actually looking at the credit report, which is at- That's what I was looking for. Where did you find it? It's at doc30-1, exhibit W. Okay, that's easy to find. And that language is the exact language that she was advised when she was approved for the plan that would be reported to the credit agencies. Yeah, but wait a minute now. She was never told that if she entered into this forbearance plan and that if she complied with the plan, she would still be reported to the credit agency as delinquent, was she? She was told that it would be viewed as a late payment, and that's in one of the transcripts from one of the telephone conversations that she had with one of the Wells Fargo representatives. She specifically asked, okay, so how is this going to be viewed? And they said, this is going to be viewed as a late payment. So she was advised that it was a late payment, and she also knew, and again, it's undisputed, she also knew that she was going to owe the full amount, that this was just something... She knew she was going to owe the full amount at the end, but was her deposition taken? It was. And her deposition's in the record? It is. And she says she knew that she was going to be reported to the credit agency as being delinquent on her loan? I don't think that that's what she stated in her deposition. I think what she stated was that she knew that she was going to owe the full amount at the point in time that the forbearance plan concluded. And remember, under the act, I mean, it's to report what is accurate. And here, what's reported was clearly accurate. She was delinquent under the mortgage itself. This is a claim that you did not conduct a reasonable investigation. So what did you do? What kind of investigation did you do? Really, that issue, I mean, it's not really an issue today. Because it's accurate? Because the information is accurate? Exactly. And that's really the threshold issue. I mean, the Hinkle decision deals with whether or not there was a reasonable investigation. But the court never got to that issue because it found that the reporting was accurate. So it isn't really the same question. In other words, how do you find that the report is inaccurate, is accurate, unless you do an investigation? Well, I mean, that's true. But the threshold issue is still whether or not, based on what was reported, whether that reporting was accurate. And of course, part of that would be what Wells Fargo investigated to make the determination that it wasn't going to change its reporting. Would the reasonable investigation include what the borrower was told about the terms of the forbearance agreement? It may include that, yes. I mean, I don't think there would be anything that would, I mean, but that again, that goes to whether it's, you know, their investigation was reasonable. What documents did they look at? What did they represent? I mean, all of those things would go into, you know, the reasonableness of their investigation. So could the jury then determine, look at what she was told in determining whether or not the investigation was reasonable? In addition to the documents that in the note, for example, the forbearance agreement, and then when she was told, put it all together and determine whether a reasonable investigation was conducted. I mean, I think that's really commingling the concepts. I mean, in the district court's order, I mean, he essentially said, you know, there probably are issues of fact as to whether or not there was a reasonable investigation. But he said there's the threshold issue here. And this court, though, it's not dealing with a furniture in the Cahill decision. It dealt solely with the issue of whether or not there was accurate reporting under the act. And it found as a matter of law that there was accurate reporting. That case dealt with a credit reporting agency. But I do think that it is very instructive in this case as well. And one of the things that the court said in that case that I do think is very important is, you know, they say how important it is that under the act, I mean, the potential creditors out there have to know what the credit worthiness is of the consumer. I mean, if they had not reported that she was paying under a partial payment agreement and that she was, in fact, past due, they would be given inaccurate information. But they also, it was not reported to the credit agency that she never missed any of the payments under her forbearance plan. She always paid what the bank required of her. And that was never reported to the credit agency. Wouldn't a jury want to consider that fact in determining whether or not there was a If you're going to, I think that only would apply if, in fact, this forbearance plan somehow modified the loan itself. And it didn't. It has to be viewed separately. The fact that she complied timely with the forbearance plan. She did everything the bank asked of her. She absolutely did under the forbearance plan. None of that was ever reported to the credit agency. But the credit agency is reporting whether or not she is complying with the terms of the mortgage itself. I would imagine this lady lost her job and she has an obligation to Wells Fargo and she wants to satisfy her obligation to Wells Fargo. And one of the reasons why you enter into a forbearance plan like this, I would imagine, in the industry, is because you want to protect your credit rating. So what's the purpose of even entering into a forbearance plan if it's going to be, if it's going to negatively affect your credit rating anyway? That's why you enter into these things, because I want to protect my credit rating. Well, I mean, I think she also enters into the agreement because she doesn't want them to foreclose on her home and she doesn't want to lose her home. I mean, I think that that's probably, you know, the most importance to somebody in this situation. I mean, it's unfortunate that she, you know, was in this situation. But I mean, I think that you have to look at really what the purpose of the Fair Credit Reporting Act is. It's not to protect, it's not to protect the consumer that's run into hard times. It's to accurately report what her credit worthiness is. It seems to me that the problem here, in a sympathetic case like we have, is that even a sophisticated, she seems to be a fairly sophisticated person, may not really know the difference between a forbearance agreement and a loan modification agreement. And in the serenity of this courtroom, we can probably, you know, try to pick that apart. But wasn't she, in essence, told, you know, if you make these payments, you know, we'll go on for a certain period of time and we'll pick up six months from now? That's the essence of what she did and we're now trying to put on some legal terminology on what that transaction was. Maybe that's what we'll do, but it seems to be at odds with the reality of what happened here. Well, it's really, I don't think it's at odds with the reality of what happened here because of the fact when you look at the forbearance approval letter, I mean, it specifically says that they are going to report to the credit agencies that she is going to be paying under this partial payment agreement. The letter is a little murky. It's not really all that clear. Well, I can't rewrite the letter. But I mean, I think it does expressly say that she will be paying under a partial payment agreement. I mean, I think that's clear. I mean, even if other parts of the letter, you know, it might be a little murky. I mean, she knew that it was being reported, you know, to the credit agencies, but again, I mean, I think that there's almost too much focus on the fact of, you know, what she may have thought, what her subjective beliefs were. I mean, this really needs to be an objective standard. I mean, it needs to be whether or not the reporting was accurate under the act. And here, it was. I mean, unless the court were to find that this loan was somehow modified, which it clearly was not. Well, one of the things that's not discussed in this whole scenario is the obligation to the creditor, the credit world out there. Exactly. And so, while on the one hand, you have the borrower's concerns that the borrower's situation with the lender is properly communicated, the lender has got to communicate in a way that does not mislead the world out there. Exactly. My reading of the thing, I don't know where we go as a court with this situation, but my reading is that the world out there knew with the recording, the way it was reported, that she had a long-term debt that was not being paid, that there was something else being paid in the interim. Exactly. I agree 100%. And again, I would direct the court to its decision in Cahill because there, I mean, the court specifically made that exact point. It said, this information, which reflects efforts required to collect a debt, is clearly of interest to potential creditors and would be effectively hidden by a credit report that treated the account in good standing. And if, really, if she was reported as current, that's what would happen, was that somebody that was looking at this report would have no idea that she was going through difficult times. If the loan had been modified, if she had entered into a loan modification, this would not have been reported as delinquent. The original note would not have been reported as delinquent. Well, yes, because if she had entered into a loan modification, okay, let's say she enters into a loan modification and instead of her payments being $2,100 per month, they were $1,500 per month. That actually modifies the terms of the loan itself. And if she was making that $1,500 payment every single month, there would be no delinquency. But that's not what happened here. And I think if you look at the Bradshaw decision that's relied on by, my time's almost out, but really the Bradshaw decision is distinguishable. He's trying to rely on that to support his position. But that is a case where there was, in fact, a loan modification. So we would respectfully request that this court affirm. Thank you. Thank you, Your Honors. The Bradshaw case we were just talking about, again, it's true the loan was ultimately modified, but the credit reporting at issue, and that is part of that opinion, is talking about the credit reporting during the trial payment period, which is the time that precedes when the loan was actually modified. And I will quote from that court. If a credit report is intended to reflect a consumer's likelihood of default on his or her debts, then information showing that the plaintiffs were more than 120 days late in paying their mortgage, even though they made a timely payment each month, is misleading at best. We've talked about accuracy and accuracy having to be the prerequisite and kind of the beacon call in the FCRA. But it's important to go back and look at, this is a statutory claim under 1681 S2B, and it's not just accuracy. It's disjunctive, and it talks about completeness. After receiving notice pursuant to 1681 IA2 of this title, a dispute with regard to the completeness or the accuracy of information, that is when the furnisher must undertake an investigation that is reasonable, reviewing all of the documents and reporting the information back to the Bureau. There is a factual dispute as to whether or not this loan was reported accurately. Mrs. Feltz believes that it should be reported upon the terms that were offered and she flawlessly accepted during the six-month period of time. What I don't believe there's a dispute on, based upon the corporate rep testimony and the evidence before the trial court, is that the completeness of the information is not there. If Wells Fargo wanted to take the position that it was the original note and the original mortgage and that's what carries the day, notwithstanding any partial payment agreement that they offered and Mrs. Feltz accepted and performed flawlessly under, then at a backdrop so a user of a credit report can understand what's going on. Candidly, from representing thousands of debtors that go into bankruptcy over the years, I've looked at more credit reports than I care to disclose. When you have a credit report that says paying under a partial payment agreement and that is disclosed there and then the user of that report looks to the upper left-hand corner and sees $22,308 past due and that $2,197.38 is the monthly payment, there is a very plausible if not likely interpretation of that, that the original note, the debtor couldn't make the payments. There's now been a subsidiary agreement, a partial payment agreement and look, here's the terms and they can't make those either. Candidly, if this information had just been fully disclosed and reported, that there's a partial payment agreement. That's accurate though, isn't it? Isn't that accurate information, what you just said? No, because she's performing under the partial payment agreement, your honor. I guess that's what I'm saying is… You're talking about two things. You're focusing on that and Judge Wilson is focused on the mortgage. That's right and so when you report half-truths of both, part of the information here has to do with a partial payment agreement and part of it is the historical original loan and there's no context to explain it. A user of that information can see partial payment agreement but then still see delinquency and think that they're delinquent on the subsidiary agreement. It's just not how this was supposed to be reported. Your honor had asked if there was a case law specifically on point and again, we've got ones that we've talked about in trial payment periods up to a loan modification that hold that this would be inaccurate reporting or at a minimum should go to a jury to decide. There is also CDIA guidelines and an FM servicing guide that has been talked about in the pleadings. We do not stand here before the court saying that that is controlling obviously but it is persuasive. This is Wells Fargo's client, the federal government, saying you need a full file report and full file report means to tell everything and that says the CDIA guidelines apply. The CDIA guidelines is a consortium of furnishers like Wells Fargo that have anticipated loss mitigation is going to happen and we need to have an intelligible way to report this information. I thank your honors for your time.